UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION


PAT RICHTER,                              )
                                         )
                    Plaintiff,            )
                                         )
         v.                               )                    No. 08 C 50026
                                         )
                                         )
INSTAR ENTERPRISES                        )
INTERNATIONAL, INC.,                      )
                                         )
                    Defendant.            )


<u>MEMORANDUM OPINION AND ORDER</u>

FREDERICK J. KAPALA, District Judge:


On February 21, 2008, plaintiff, Pat Richter, filed a seven-count complaint against defendant,

INSTAR Enterprises International, alleging that defendant reproduced, distributed and displayed

plaintiff's artwork without permission in violation of the Copyright Act, 17 U.S.C. § 501. Plaintiff

is an artist who has created numerous works of visual art for which she has obtained federal

copyright registrations. Plaintiff alleges that defendant, a New Jersey corporation with its principal

place of business in New Jersey, displayed and sold decals[1] of plaintiff's work through its interactive

website. Plaintiff also alleges that defendant sells decals and designs to customers in Illinois through

its website. On May 21, 2008, defendant filed a motion to dismiss for lack of personal jurisdiction

and improper venue pursuant to Federal Rule of Civil Procedure 12(b). Fed. R. Civ. P. 12(b)(2)-(3).

---

[1]A decal is a picture, design, or label made to be transferred from specially prepared paper.

# I. BACKGROUND

In support of its motion, defendant offers the affidavit of Gary Rogers, the Vice President of INSTAR Enterprises. According to Rogers, defendant is a small company with four employees that does not have a place of business or agent in Illinois, and is not licensed to do business here. In 2007, defendant's total sales were approximately $900,000. Rogers avers that it is highly unlikely more than one tenth of one percent of defendant's business comes from Illinois. Rogers does not deny that at some point, plaintiff's designs were placed on defendant's website. According to Rogers, defendant obtained decals of plaintiff's works from a company called Tile Art, a licensee of plaintiff. On November 16, 2007, Rogers received a phone call from plaintiff's husband, David Richter, who told Rogers that he had seen several decals of plaintiff's work at a craft show at Arlington Racetrack, in Illinois, and did not believe defendant had the right to sell the decals. In response, Rogers removed the decals from the website that same day. Upon review of defendant's database, Rogers surmised that defendant had sold 239 decals of plaintiff's works, none of which was either billed to or shipped to Illinois. Rogers avers that the decals Richter saw at Arlington Racetrack were sold to a customer in Minnesota, who transferred them to a customer in Wisconsin, who attached them to furniture and brought them to Illinois.

In her response to defendant's motion, plaintiff has submitted David Richter's affidavit. Richter is the Vice President of Pat Richter Gallery, Inc. According to Mr. Richter, in early November 2007, he saw plaintiff's works on display and for sale at an art show at Arlington Racetrack, and learned that the decals of the works were purchased from defendant. Thereafter, Mr. Richter learned that unauthorized copies of plaintiff's work were also on display at craft shows in Villa Park, Illinois and Rockford, Illinois. The salespeople of these works informed Richter that

they had received the decals in question from defendant.  Richter then visited defendant's website, which he accessed from his computer in Boone County, Illinois.  When he searched for plaintiff's work, he found no fewer than eight electronic image copies of plaintiff's works that defendant was offering for sale.  Richter noted that defendant's website was fully interactive and allowed customers to purchase items, including plaintiff's works, from its website.  Richter has seen works made from defendant's decals at half a dozen art and craft shows in the northern part of Illinois.

In its motion, defendant argues that this court lacks personal jurisdiction because defendant does not have a place of business or agent in Illinois, its sales to this state are <u>de minimus</u>, and its interactive website is not sufficient to confer jurisdiction.  Plaintiff responds that personal jurisdiction is proper because defendant has contributed to acts of infringement within the state, and sold and offered products for sale in Illinois.  Because the court finds it does not have personal jurisdiction over defendant, it does not proceed to consider defendant's arguments as to venue.

## II.  DISCUSSION

"[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a <u>prima facie</u> case of personal jurisdiction."  <u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 782 (7th Cir. 2003) (quotation marks omitted).  This burden is not a heavy one.  <u>Rual Trade Ltd. v Viva Trade LLC</u>, 549 F. Supp. 2d 1067, 1073 (E.D. Wis. 2008).  "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'"  <u>Id.</u>  However, "the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the

plaintiffs." First Nat'l Bank v. El Camino Res., Ltd., 447 F. Supp. 2d 902, 905 (N.D. Ill. 2006) (quotation marks omitted).

In a federal question case, such as this one, personal jurisdiction has the reach set out in Federal Rule of Civil Procedure 4(k). Rule 4(k)(1) provides the district court with jurisdiction over the person of a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Rule 4(k)(2) further extends personal jurisdiction in federal question cases if the defendant is "not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(A)-(B). In this case, because defendant is subject to jurisdiction in the state courts of New Jersey,[2] Rule 4(k)(2) does not apply. Thus, in order for this court to have personal jurisdiction, defendant must be subject to the jurisdiction of a court of general jurisdiction in Illinois.

The Illinois long-arm statute, 735 ILCS 5/2-209, permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 714 (7th Cir. 2002) (quotation marks omitted); see also 735 ILCS 5/2-209(c). "[I]n almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." Keller v. Henderson, 359 Ill.

---

[2]New Jersey confers personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992); see also NII Brokerage, L.L.C. v. Roadway Express, Inc., No. 07-5125 (HAA), 2008 WL 2810160, at *4 (D.N.J. July 18, 2008). In this case, it is clear defendant has minimum contacts with New Jersey consistent with due process. Defendant is a New Jersey corporation doing business in New Jersey. Accordingly, defendant has substantial, continuous and systematic contacts with New Jersey that are consistent with principles of due process. See NII Brokerage, 2008 WL 2810160, at *6.

App. 3d 605, 620 (2005); see also Sabados v. Planned Parenthood of Greater Ind., 378 Ill. App. 3d 243, 247 n.2 (2007). Because neither case law, nor the parties, have indicated that the analyses diverge in this case, the court proceeds to the federal analysis. See Citadel Group Ltd. v. Wash. Reg'l Med. Ctr., 536 F.3d 757, 761 (7th Cir. 2008).

Defendants may be subject to either specific or general jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir. 1997). General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state. Id. Specific jurisdiction, meanwhile, "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Id. (quotation marks omitted).

## A. General Jurisdiction

In order to expose itself to the general jurisdiction of the courts of Illinois, a defendant's business contacts in Illinois must be intentional, continuous, and substantial rather than inadvertent, trivial, or sporadic, continue up to the time of suit, and evidence a purpose on the part of the defendant to avail himself of the protection of the laws of Illinois. See Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co., 892 F.2d 566, 570 (7th Cir. 1989); Publ'ns Int'l, Ltd. v. Burke/Triolo, Inc., 121 F. Supp. 2d 1178, 1182 (N.D. Ill. 2000). In determining whether general jurisdiction exists, courts examine the following factors: (1) whether defendants maintain offices or employees in Illinois; (2) whether defendants send agents into Illinois to conduct business; (3) whether defendants have designated an agent for service of process in Illinois; (4) whether defendants advertise or solicit business in Illinois; and (5) the extent to which defendants conduct business in Illinois. Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd., 304 F. Supp. 2d 1018, 1024 (N.D.

Ill. 2004) (citing <u>Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.</u>, 262 F. Supp. 2d 898, 906-07 (N.D. Ill. 2003)).

In this case, almost all of these factors clearly weigh against general jurisdiction. Defendant does not maintain offices in Illinois or have employees in Illinois. It does not send agents into Illinois, or have a registered agent in Illinois. Moreover, it is undisputed that defendant does not advertise or solicit in Illinois in any way other than allowing Illinois residents to access defendant's website. As to the final factor- the extent to which defendant conducts business within the state-plaintiff points to three facts: defendant sells products in Illinois, defendant operates a fully interactive website that can be accessed by customers in Illinois, and defendant's products are routinely on display or for sale at local art and craft shows in Illinois. However, for the following reasons, these contacts fail to support general jurisdiction.

### 1. Sales

Although sales in a state may indicate the extent to which defendant does business in a state, the fact that a party has made a sale to the forum state does not necessarily justify general jurisdiction there. Rather, the party's sales must be substantial. Where a defendant's sales in a state represent both a small percentage of a defendant's total sales and a small volume of sales over all, its contact with the forum state cannot be said to be substantial. <u>See</u> <u>Tate & Lyle Sucralose, Inc. v. Hebei Sukeri Sci. & Tech. Co.</u>, No. 06-2102, 2006 WL 3391421, at *4 (C.D. Ill. Nov. 22, 2006) (holding that sales amounting to only .1% of defendant's total revenue not enough to merit general jurisdiction); <u>McGill v. Gigantex Techs. Co.</u>, No. 05C5892, 2005 WL 3436403, at *3 (N.D. Ill. Dec. 12, 2005) (holding that there was not general jurisdiction over defendant where sales to Illinois were a "very small percentage of its total sales"); <u>Berndorf Belt Sys., Inc. v. Harwood Rubber Prods., Inc.</u>,

No. 01 C 2202, 2001 WL 800090, at *2 (N.D. Ill. July 16, 2001) (finding that where defendant generated only a small percentage of its annual receipts from Illinois-based companies, that alone was not sufficient for general jurisdiction). In this case, defendant's sales to Illinois represent approximately one tenth of one percent of defendant's overall sales. These sales cannot be said to be substantial or continuous. As a result, although defendant does not deny that it makes sales in Illinois, the minuscule amount of those sales indicates that the extent to which defendant does business in Illinois is small and general jurisdiction does not exist.

## 2. Website

The existence of defendant's interactive website does not change this result. The type of internet activity that is sufficient to establish personal jurisdiction remains an emerging area of jurisprudence in Illinois. See Linehan v. Golden Nugget, No. 05 C 7030, 2008 WL 4181743, at *5 (N.D. Ill. Sept. 5, 2008); Howard v. Mo. Bone & Joint Ctr., Inc., 373 Ill. App. 3d 738, 743 (2007). Many courts in Illinois and in this Circuit have followed a sliding scale analysis. See George S. May Int'l Co. v. Xcentric Ventures, LLC, 409 F. Supp. 2d 1052, 1057-58 (N.D. Ill. 2006); Jackson v. Cal. Newspapers P'ship, 406 F. Supp. 2d 893, 897 (N.D. Ill. 2005); Publ'ns Int'l, 121 F. Supp. 2d at 1182; Berthold Types Ltd. v. European Mikrograf Corp., 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000); Euromarket Designs Inc. v. Crate & Barrel Ltd., 96 F. Supp. 2d 824, 837 (N.D. Ill. 2000); see also Larochelle v. Allamian, 361 Ill. App. 3d 217, 225 (2005); Bombliss v. Cornelson, 355 Ill. App. 3d 1107, 1114 (2005) This approach, first set out in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), measures the likelihood that personal jurisdiction can be constitutionally exercised by the nature and quality of commercial activity that an entity conducts over the internet. Accordingly, while the operation of a passive website that posts information

available to the forum state's residents is clearly not enough to merit personal jurisdiction over a party, Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004), courts have recognized that the operation of an interactive website, such as the one at issue here, on which consumers can order the defendant's goods or services may subject a defendant to the court's jurisdiction, see George S. May Int'l, 409 F. Supp. 2d at 1059; Zippo, 952 F. Supp. at 1125-26.

However, in most cases the operation of a fully interactive website confers specific, not general jurisdiction. See LaSalle Nat'l Bank v. Vitro, Sociedad Anonima, 85 F. Supp. 2d 857, 862-63 (N.D. Ill. 2000). In fact, several courts have rejected the notion that general jurisdiction over a defendant is appropriate where the defendant only makes a small amount of internet sales to the forum state. See People of Ill. ex rel. Madigan v. Hemi Group, LLC, No. 08-3050, 2008 WL 4545349, at *3 (C.D. Ill. Oct. 10 2008) (finding that defendant's sales of cigarettes to Illinois residents through its websites was not enough for general jurisdiction where plaintiff did not present evidence of substantial sales or extensive advertising in Illinois); FC Inv. Group LC v. IFX Markets, Ltd., 529 F.3d 1087, 1092 (D.C. Cir. 2008) (holding that residents must use the website in a continuous and systematic way for it to form the basis of general jurisdiction); Gencor Pac., Inc. v. Nature's Thyme, LLC, No. 07 C 167, 2007 WL 1225362, at *6 (N.D. Ill. Apr. 24, 2007) (holding that even where defendant's website was interactive, its online activities were not so extensive and central to its business's operation to subject defendant to general jurisdiction); Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297 F. Supp. 2d 1154, 1161-62 (W.D. Wis. 2004) (holding that one book sale over the internet is not enough for general jurisdiction); Euromarket Designs, 96 F. Supp. 2d at 833 (finding that general jurisdiction was not appropriate where Illinois resident purchased goods from defendant's interactive website and had them sent to Illinois); Molnlycke Health Care

AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) ("[T]he establishment of a website through which customers can order products does not, on its own, suffice to establish general jurisdiction. To hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state."). Those courts that have exercised general jurisdiction over an operator of an interactive website have also considered the operator's additional contacts with the forum state. See George S. May Int'l, 409 F. Supp. 2d at 1060; Publ'ns Int'l, 121 F. Supp. 2d at 1183. For example, in Publications International, the defendant had a sales representative in Illinois, and sought out Illinois customers. Publ'ns Int'l, 121 F. Supp. 2d at 1183.

In this case, plaintiff has not made a sufficient showing that defendant's sales to Illinois occurred through its internet site.[3] In addition, defendant does not have additional contacts with Illinois that justified general jurisdiction in other cases. Thus, plaintiff's argument that the defendant's website merits general jurisdiction hinges solely on the potential of Illinois customers to purchase products from defendant's website. This is not enough to demonstrate continuous and systematic contacts with Illinois.

Moreover, even if defendant's sales to Illinois had been made over its website, this court will not blindly follow the sliding scale approach where is does not comport with the underlying

---

[3] As stated above, where defendant presents evidence, plaintiff must make out a prima facie case of personal jurisdiction with its own evidence. See Purdue Research Found., 338 F.3d at 782. If defendant did not submit evidence, the court simply asks whether the complaint alleges facts that arguably provide a basis for jurisdiction. Rual Trade, 549 F. Supp. 2d at 1073. In this case, although plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record, neither party presents evidence that shows defendant made sales to Illinois over the internet. Nor does plaintiff even allege in the complaint or assert in its argument that the sales defendant made in Illinois were done over the internet. Accordingly, this court cannot assume such a fact.

principles of general jurisdiction. See Linehan, 2008 WL 4181743, at *5; Howard, 373 Ill. App. 3d at 743; Hy Cite, 297 F. Supp. 2d at 1158-60. Although defendant operates an interactive web site, defendant has not made the amount of sales to demonstrate intentional, continuous, and substantial contacts with Illinois. The accessibility and breadth of the internet make it a unique mode of communication, but this does not require courts to stray from fundamental jurisdictional principles. See Linehan, 2008 WL 4181743 at *5; Howard, 373 Ill. App. 3d at 743; Hy Cite, 297 F. Supp. 2d at 1160. As the cited case law demonstrates, defendant's sales to Illinois do not demonstrate the level of contact with Illinois that would support general jurisdiction over defendant. The fact that those sales occurred over the internet does not change that result. See Hy Cite, 297 F. Supp. 2d at 1160 ("[R]egardless how interactive a website is, it cannot form the basis for personal jurisdiction . . . unless the contacts through the website are so substantial that they may be considered 'systematic and continuous' for the purpose of general jurisdiction."). Accordingly, plaintiff has not demonstrated that the extent to which defendant does business in Illinois justifies this court's general jurisdiction.

### 3. Stream of Commerce

Plaintiff also notes that defendant's products were displayed at local craft fairs in Illinois. It is undisputed that defendant does not directly sell any artwork at Illinois' craft shows. Rather, individual crafters used defendant's products as materials within their independent works. Plaintiff asserts that the stream of commerce theory of personal jurisdiction could apply to these contacts. Pursuant to the stream of commerce theory, a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum

State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980). However, the Seventh Circuit has specifically held that the stream of commerce theory does not subject a defendant to the general jurisdiction of the court. See Purdue Research Found., 338 F.3d at 788. Thus, the court will return to this argument in its discussion of specific jurisdiction.

### 4. Combination of Factors

Finally, even the combination of these contacts fails to demonstrate that defendant has intentional, continuous, and substantial contact with Illinois. In order to be subject to this court's general jurisdiction, a defendant must have contacts that are "so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." Id. at 787. Defendant's small percentage of sales together with the fact that some of its products made it into the state of Illinois through independent vendors is far from a constructive presence in the state. Accordingly, this court does not have general jurisdiction over defendant.

### B. Specific Jurisdiction

In the absence of general jurisdiction, a court may exercise personal jurisdiction over a non-resident defendant in cases where the defendant has sustained certain minimum contacts and the claim asserted arises out of or results from the defendant's forum related activities. Euromarket Designs, 96 F. Supp. 2d at 833-34. Crucial to the minimum-contacts analysis is a showing that the defendant should reasonably anticipate being haled into court in the forum state because the defendant has purposefully availed itself of the privilege of conducting activities there. Citadel Group, 536 F.3d at 761. "This requirement ensures that the defendant will not be haled into a

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" Euromarket Designs, 96 F. Supp. 2d at 834 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Although not entirely clear, it appears plaintiff argues that this court has specific jurisdiction over defendant because (1) defendant's actions caused harm to plaintiff in the forum state, (2) defendant has an interactive website that displayed the copyrighted work in Illinois, and (3) defendant's works entered the stream of commerce in Illinois and were displayed at craft shows in Illinois. The court will explore each of these arguments in turn.

1. Harm Suffered in Illinois

Plaintiff's first argument that specific jurisdiction is merited because she suffered harm in Illinois is known as the effects doctrine. Euromarket Designs, 96 F. Supp. 2d at 835. Under the effects doctrine, personal jurisdiction over a nonresident defendant is proper when the defendant's intentional tortious actions expressly aimed at the forum state cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to be suffered. Id.

The Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984), has provided the foundation for the application of the effects test in the Seventh Circuit. See Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997); Indianapolis Colts v. Metro. Balt. Football Club Ltd. P'ship, 34 F.3d 410, 412 (7th Cir. 1994). In Calder, the plaintiff, a California resident, brought an action for libel against Florida defendants, the writers and editors of a National Enquirer article about plaintiff. 465 U.S. at 784-85. The Supreme Court held personal jurisdiction over defendants was proper in California because the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California." Id. at 789. They wrote and edited an article knowing "that the brunt

of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." Id. at 789-90. In its analysis, the court specifically noted that the defendants were "not charged with mere untargeted negligence," but intentional actions, and concluded that, under the circumstances, the defendants "must reasonably anticipate being haled into court there." Id. at 789-90 (quotation marks omitted).

Relying on Calder, the Seventh Circuit applied the effects doctrine in Indianapolis Colts, 34 F.3d at 412, and Janmark, 132 F.3d at 1202-03. In Indianapolis Colts, the Indianapolis Colts sued the Canadian Football League's Baltimore CFL Colts for trademark infringement on the grounds that consumers would think that the new Baltimore team was in some way related to the Indianapolis Colts. 34 F.3d at 411. The Seventh Circuit reasoned that personal jurisdiction over the Baltimore team in Indiana was proper because "[b]y choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana." Id. at 411. Moreover, the court considered that because the bulk of Indianapolis Colts' most loyal fans reside in Indiana, defendant knew the largest concentration of consumers likely to be confused by the implicit affiliation would be in Indiana. Id. at 412. The court also noted that there was no coincidence in the choice of the name Baltimore CFL Colts, as that had been the previous name of the NFL's Colts before the team was moved to Indianapolis. Id.

Similarly, in Janmark, the Seventh Circuit concluded jurisdiction was merited because the injury and, thus, the tort occurred in Illinois. 132 F.3d at 1202-03. In that case, the plaintiff asserted that defendant, a business competitor located in California, intentionally interfered with its prospective economic advantage by making false claims of copyright infringement to a customer located in New Jersey. Id. at 1202. As a result of defendant's assertions, the customer cancelled

the order with the plaintiff.  Id.  The Seventh Circuit reasoned that jurisdiction was proper because of the foreseeable injury to plaintiff in Illinois.  Id.

"The common thread of these effects test cases is the intentional infliction of harm to a plaintiff in the forum state."  Novelty, Inc. v. RCB Distrib., No. 1:08-cv-0418-DFH-WTL, 2008 WL 2705532, at *3 (S.D. Ind. July 9, 2008).  Both Calder and Janmark involved intentional torts, and the court's discussion in Indianapolis Colts makes clear that the defendant in that case knew of the possible confusion in names, and in fact, sought to capitalize on it, see Hy Cite, 297 F. Supp. 2d at 1167.  Accordingly, in each of these cases the defendants expressly aimed their actions to cause harm in the forum state, thereby purposefully availing themselves of the privilege of conducting activities in the forum state.

In contrast, in this case, the evidence does not demonstrate that defendant intentionally inflicted harm upon the plaintiff.  First, in stark contrast to Calder and Janmark, this case does not concern an intentional tort.  Copyright infringement does not require any particular state of mind. Microsoft Corp. v. Logical Choice Computers, Inc., No. 99 C 1300, 2001 WL 58950, at *8 (N.D. Ill. Jan 22, 2001); Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs., 983 F. Supp. 1167, 1172 (N.D. Ill. 1997).  More importantly, unlike the defendant in Indianapolis Colts, defendant provides undisputed evidence that it did not know its decal of plaintiff's work violated plaintiff's copyright. According to Rogers' affidavit, he believed defendant had obtained the designs at issue from a legitimate licensee and was entitled to sell them.  Thus, according to the undisputed evidence, when defendant displayed and sold plaintiff's works, it did not know that any tortious acts were occurring, much less direct such acts toward Illinois.  As noted by the Supreme Court in Calder, when it comes to the effects test mere untargeted negligence differs from intentional conduct.  465 U.S. at 789.  As

such, the lack of any intent on the part of defendant creates a great disparity between the facts of this case and those of <u>Calder</u>, <u>Indianapolis Colts</u>, and <u>Janmark</u>.[4]

This case is much more similar to the district court's decision in <u>Novelty, Inc.</u>  In that case, the plaintiff, an Indiana corporation, claimed that defendant, a Texas company, infringed on its copyright on "Coffin Cigarette" products.  <u>Novelty, Inc.</u>, 2008 WL 2705532, at *1.  Defendant sold only a very modest quantity of the Coffin Cigarette products, and only did so outside of Indiana.  <u>Id.</u>  As in this case, the defendant in <u>Novelty, Inc.</u> denied, with affidavit evidence, any intent to violate the plaintiff's copyright, and plaintiff failed to come forward with any evidence to show otherwise.  <u>Id.</u> at *3.  The plaintiff claimed that the effects doctrine established jurisdiction.  <u>Id.</u> at *2.  The court disagreed, noting that copyright infringement may occur unintentionally, and the allegation of infringement should not, by itself force the offending party to defend a suit anywhere a plaintiff might reside.  <u>Id.</u> at *4.  Accordingly, although the court recognized <u>Indianapolis Colts</u> and <u>Janmark</u> as binding precedent, it declined "to extend the effects test by relaxing the earlier cases' requirement of intentional harm in the forum state," noting that such an extension would be a "dramatic expansion of personal jurisdiction."  <u>Id.</u>

---

[4]The other intellectual property cases cited by plaintiff are similarly distinguishable from this case.  In both <u>Euromarket Designs</u>, 96 F. Supp. 2d at 836, and <u>Bunn-O-Matic v. Bunn Coffee Service, Inc.</u>, 46 U.S.P.Q. 2d 1375, 1377 (C.D. Ill. 1998), there are indications that the infringing defendants knew their actions would affect interests in Illinois.  For example, in <u>Bunn-Matic</u>, the defendant had previously entered into a license agreement with the plaintiff acknowledging plaintiff's ownership right to the mark at issue, and the defendant agreed for the purposes of the motion that the defendant intended to injure plaintiff in Illinois.  46 U.S.P.Q. 2d at 1377.  Likewise, in <u>Euromarket Designs</u>, the court found that the defendants deliberately designed an internet website using an Illinois company's mark with the knowledge that this conduct would likely injure the plaintiff in Illinois. 96 F. Supp. 2d at 836.

This court similarly declines to approve such an expansion of the effects test. Because plaintiff has not refuted defendant's evidence that it had no intent to infringe on plaintiff's copyright, this court cannot find defendant could have anticipated being haled into court in Illinois. Accordingly, although plaintiff arguably suffered a financial loss in Illinois from defendant selling her artwork elsewhere in the country, the effects test fails to support specific jurisdiction in this case.

### 2. Website Display

Plaintiff also argues that the defendant had minimum contacts with Illinois by displaying plaintiff's artwork on its website which was accessed in Illinois. As discussed above in Section A.2., many courts in Illinois and in this Circuit have utilized the sliding scale approach to assess whether the interactivity of a website merits personal jurisdiction over the website operator. Under this approach, the more interactive the website is the greater the likelihood that the defendant has established contacts that comport with the requirements of personal jurisdiction. Zippo, 952 F. Supp. at 1124. However, while the sliding scale approach is often effective in aligning website activities with more traditional contacts with a forum, this case does not avail itself to a clear-cut application of the sliding scale test.

In this case, defendant's website is fully interactive, and allows customers in Illinois to purchase defendant's products online. Thus, relying on the application of the sliding scale test in Zippo and Euromarket Designs, plaintiff argues the website's high level of interactivity subjects defendant to this court's jurisdiction. In Zippo, the basis of plaintiff's trademark claims was the out-of-state defendant's use of plaintiff's trademark in the domain names it held, in numerous locations on its website, and in the heading of an internet newsgroup message it posted to subscribers. 952 F. Supp. at 1121. Three-thousand of defendant's paying subscribers lived in the forum state. Id.

Applying the sliding scale test, the <u>Zippo</u> court held that through its website the defendant had repeatedly and consciously chosen to make contact with forum state residents by processing their applications to the website and assigning them passwords, and as such found defendant had established the minimum contacts necessary for specific jurisdiction. <u>Id.</u> at 1126-27. In <u>Euromarket Designs</u>, the defendant, an Irish corporation, infringed on plaintiff's trademark by using plaintiff's name in the domain name of the website, and by using plaintiff's name and mark throughout the site. 96 F. Supp. 2d at 829, 836. In applying the sliding scale approach, the court noted that the defendant billed customers in Illinois, collected revenues from Illinois, and recorded sales on goods ordered from Illinois. <u>Id.</u> at 838. In addition, the appropriateness of specific jurisdiction in that case was strengthened by the defendant's non-internet contacts, including its relationship with Illinois suppliers, attendance at trade shows in Illinois, and advertisement in national publications circulated in Illinois. <u>Id.</u>

Although defendant's website is interactive like those in the cases above, the similarities between those cases and the case at bar end there. First, plaintiff has presented no evidence that defendant made any sales to Illinois through its interactive website. In both <u>Zippo</u> and <u>Euromarket Designs</u>, the defendants had actually interacted with Illinois residents by making sales or entering into contracts with them. In this case, there is no evidence that any Illinois resident, other than plaintiff's husband, ever accessed defendant's website. Also in <u>Euromarket</u>, defendant had other contacts with the forum state that, in addition to the website, supported specific jurisdiction. Those contacts are not present here. As a result, in contrast to <u>Zippo</u> or <u>Euromarket</u>, the question this court must answer is whether a defendant who displays plaintiff's artwork and offers to sell that artwork

on an interactive webpage accessible in Illinois, but sells nothing in Illinois through the website, is subject to personal jurisdiction here.

In Jennings, the Seventh Circuit rejected the notion that specific jurisdiction can be premised on the maintenance of an internet site alone. 383 F.3d at 549. It reasoned that a website that "merely makes available information about the company and its products" does not comport with the exercise of personal jurisdiction because the defendant is not directing its business activities toward consumers in the forum state in particular. Id. The court went on to remark that "[p]remising personal jurisdiction on the maintenance of a website without requiring some level of 'interactivity' between the defendant and consumers in the forum state would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country." Id. at 550.

Even though this case significantly differs from Jennings in that defendant operated an interactive, not passive website, this court cannot find that by offering the artwork for sale on the internet, without more, demonstrates that defendant purposefully directed its activities concerning plaintiff's artwork toward customers in Illinois, as required by Jennings. Defendant's contacts with Illinois in regard to plaintiff's artwork are only potential contacts. Compare Hy Cite, 297 F. Supp. 2d at 1163. Plaintiff has offered no facts to show that anyone in Illinois used the interactive aspects of defendant's website to purchase artwork or that defendant shipped the artwork into Illinois. Other courts have similarly held that "[t]he mere existence of a website that makes an infringing product available for purchase is not enough to establish personal jurisdiction." Tate, 2006 WL 3391421, at *4; see also Linehan, 2008 WL 4181743, at *6 (holding that the operation of an interactive website alone is not an adequate basis for the exercise of specific jurisdiction); Trintec

Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005); Hy Cite, 297 F. Supp. 2d at 1163.

Moreover, the unilateral activity of another party cannot establish defendant's contact with the forum state.  Burger King, 471 U.S. at 475.   As a result, the actions of plaintiff's husband in accessing defendant's website cannot provide the sole foundation of defendant's minimum contacts with Illinois.  If personal jurisdiction over defendant could be established simply by plaintiff accessing the page of the website that offers to sell plaintiff's artwork, plaintiff could establish personal jurisdiction over defendant in any state, and this would defeat the nature of personal jurisdiction altogether.  Compare Sullivan v. Author Solutions, Inc., No. 07-C-1137, 2008 WL 2937786, at *4 n.8 (E.D. Wis. July 23, 2008) (noting that if defendant had made no sales to Wisconsin other than to plaintiff's attorney's staff member, the court's conclusion that jurisdiction was proper may be different); Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328, 1333 n.4 (E.D. Mo. 1996) ("The Court does not consider, for purposes of establishing personal jurisdiction, the 180 times that plaintiff accessed defendant's website.  If such contacts were to be considered, a plaintiff could always try to create personal jurisdiction.").

Accordingly, because the evidence presented does not show that anyone in Illinois other than plaintiff's husband viewed or interacted with defendant's website, and because this court cannot find that the mere existence of an interactive website accessible in Illinois is enough to demonstrate minimum contacts with Illinois, specific personal jurisdiction over defendant on the basis of its website is not appropriate.

### 3. Stream of Commerce

Finally, plaintiff argues that defendant should be subject to specific jurisdiction in Illinois under the stream of commerce theory because plaintiff's artwork was displayed and sold at multiple trade shows in Illinois. Pursuant to the stream of commerce theory, "[i]f a defendant delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state, that defendant may be subject to specific jurisdiction in the forum state." <u>Jennings</u>, 383 F.3d at 550. Accordingly, if the sale of the product of a manufacturer or distributor is not simply an isolated occurrence, "but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States . . . ." <u>World-Wide Volkswagen</u>, 444 U.S. at 297.

Defendant argues that the Supreme Court specifically rejected plaintiff's stream of commerce argument in <u>Asahi v. Metal Industry Co. v. Superior Court of California, Solano County</u>, 480 U.S. 102 (1987). This argument is problematic in two ways. First, <u>Asahi</u> is not necessarily controlling here. Although unanimous in outcome, the Justices in <u>Asahi</u> were evenly divided as to the proper scope of the stream of commerce theory. <u>Id.</u> at 105. Four Justices, led by Justice O'Connor, employed a strict view of the minimum contacts necessary under the stream of commerce theory that differed from the other four Justices' more permissive view. In <u>Dehmlow v. Austin Fireworks</u>, 963 F.2d 941, 947 (7th Cir. 1992), the Seventh Circuit recognized the split in the reasoning of <u>Asahi</u> and held that "[b]ecause the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider that theory to be determinative." More recently in <u>Jennings</u>, the Seventh Circuit expressly refused to resolve the question of whether the <u>Asahi</u> decision

has altered the stream of commerce theory set forth in World-Wide Volkswagen. Jennings, 383 F.3d at 550 n.2. As a result, defendant's reliance on Asahi is not dispositive here.

Second, even when applied, the reasoning of Asahi does not completely reject the stream of commerce theory. Justice O'Connor's analysis rejects the notion that a defendant's awareness that the stream of commerce may or will sweep the product into the forum state converts the act of placing the product into the stream of commerce into an act purposefully directed toward the forum state. Asahi, 480 U.S. at 111-112. However, it also acknowledges that the general business conduct of the defendant in the forum state, in combination with defendant's product entering the forum state through the stream of commerce, may indicate an intent or purpose by the defendant to serve the market in the forum state, and thus, provide the minimum contacts necessary for personal jurisdiction. Id.; see also Dehmlow, 963 F.2d at 947 n.6 (noting that even those additional contacts between the defendant and forum state that do not arise out of the claim may be considered when determining for specific jurisdiction purposes whether the defendant merely placed his product in the stream of commerce, or whether his action was more purposefully directed at the forum state). Thus, this court cannot dispense with plaintiff's stream of commerce theory as easily as defendant would suggest.

That being said, plaintiff has failed to provide sufficient evidence to support its stream of commerce argument. Even a broad application of the stream of commerce theory requires evidence that the defendant had an awareness or expectation that the stream of commerce would sweep the product at issue into the forum state. See World-Wide Volkswagen, 444 U.S. at 297-98; Jennings, 383 F.3d at 550 n.2. As noted in Justice Brennan's concurring opinion in Asahi, the stream of commerce refers to the flow of products from manufacture to distribution to retail sale, so that as

long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Asahi, 480 U.S. at 117 (Brennan, J., concurring).

The evidence in this case does not reflect a traditional, predictable distributor/retailer relationship between defendant and the purchasers of its products. From the evidence, it can be reasonably inferred that defendant's decals are sold in order that they may be placed on tiles or other foundational materials. However, beyond the fact that the decals defendant sells are not of much use when not affixed to another object by another party, the record reveals little about who buys defendant's products, where they are sold, whether they are sold to retailers for future sale to crafters, what fora the retailers target, or whether defendant sells is products with the awareness that they are frequently used in artwork sold at craft shows.[5]

The strongest evidence of any awareness by defendant that its decals of plaintiff's works would end up in Illinois is Mr. Richter's statement that he is "familiar with INSTAR and the fact that it sells products to persons in Illinois and to others in the Midwest who display and sell the works they manufacture from INSTAR's decals in Illinois."[6] Mr. Richter does not assert, however,

---

[5]The fact that defendant makes sixty percent of its sales to a Georgia business known as Westminster Ceramics demonstrates that defendant does not solely sell its products directly to individual crafters for their personal use. However, it remains unclear if defendant has retailers in the Midwest or knows that the crafters it sells to in the Midwest are likely to use its products on crafts they plan to sell.

[6]Mr. Richter's assertion that he is "familiar with" INSTAR is hardly a strong basis for his assertions of INSTAR's activities in Illinois. When a defendant has presented evidence supporting a motion to dismiss for lack of personal jurisdiction, a plaintiff opposing such a motion must present evidence of specific facts that support a finding of personal jurisdiction. See KnowledgeAZ, Inc. v. Jim Walter Res., 452 F. Supp. 2d 882, 888 (S.D. Ind. 2006). Where factual assertions amount only to vague generalizations or unsupported allegations, they are not enough to support personal jurisdiction. Id. To support his more general statement above, Mr. Richter also recounts that he has

that defendant directly sells decals of <u>plaintiff's</u> artwork in Illinois.[7]  Mr. Richter also does not

assert that when defendant sold decals of plaintiff's work in other states, it was aware that those

sales could lead to plaintiff's works being displayed or sold in Illinois.  Mr. Richter also states that

he saw images of  plaintiff's artwork that were made with defendant's decals "on display and for

sale" at at least three craft shows in Illinois.  However, this is scant evidence to show that <u>defendant</u>

had an awareness or expectation that its decals of plaintiff's works would make their way into

Illinois.[8]

Unlike the Seventh Circuit's cases finding specific jurisdiction under the stream of

commerce theory, there is no evidence defendant sold decals of plaintiff's work expecting "to serve

a broader market" or "derive direct benefits from serving that market," <u>Nelson by Carson v. Park</u>

<u>Indus., Inc.</u>, 717 F.2d 1120, 1126 (7th Cir. 1983); <u>see also</u> <u>Dehmlow</u>, 963 F.2d at 947-48; <u>Giotis v.</u>

<u>Apollo of the Ozarks, Inc.</u>, 800 F.2d 660, 667 (7th Cir. 1986), or even that the defendant knew the

purchasers of decals of plaintiff's artwork were likely to resell them in Illinois, <u>compare</u> <u>Giotis</u>, 800

F.2d at 667-68 (holding that the stream of commerce theory of jurisdiction merited personal

_____

seen works made from INSTAR decals "at half a dozen art and craft shows in the northern part of
Illinois."   However, this fact does not show INSTAR had distributed decals of plaintiff's artwork
with the awareness or expectation they would end up in Illinois.

[7] Defendant does not dispute Mr. Richter's assertion that defendant sells products to persons
in Illinois.  However, as discussed earlier the fact that defendant sells only one tenth of one percent
of its product in Illinois is not enough for general jurisdiction.  Specific jurisdiction requires that the
minimum contacts considered are those from which the claim arises.  <u>Euromarket Designs</u>, 96 F.
Supp. 2d at 834.  Consequently, the relevant contacts here must involve defendant's use of plaintiff's
artwork.

[8] Although in his affidavit Rogers explains that at least one of the decals ended up in Illinois
due to the actions of a customer in Minnesota, his affidavit does not show that he or anyone else at
INSTAR knew of this stream of commerce prior to this case being filed.

jurisdiction over defendant where defendant knowingly sold fireworks to an interim distributor who advertised the fireworks nationwide and sold them to a number of different states); <u>Nelson</u>, 717 F.2d at 1126-27 (finding that the stream of commerce theory applied to a defendant because there was evidence the retailer visited the defendant's premises and one of the defendant's directors knew that the shirts manufactured there would be imported into the United States and sold at the retailer's stores). In addition, there is no assertion that the decals of plaintiff's work entered Illinois in such quantities to establish a predictable distribution pattern into Illinois from which defendant's awareness of it could be assumed. <u>See</u> <u>Asahi</u>, 480 U.S. at 122 (Stevens, J., concurring) ("Whether or not this conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components. . . . I would be inclined to conclude that a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment'. . . ."). Moreover, defendant's product is not an item that would necessarily be used to manufacture other products for sale. In fact, plaintiff does not dispute defendant's assertion in its brief that its product lends itself to home use by individuals.

Instead, this case is very similar to <u>Curtis Management Group, Inc. v. Academy of Motion Picture Arts & Sciences</u>, 717 F. Supp. 1362 (S.D. Ind. 1989). In that case, the defendant sold posters displaying an image protected by the plaintiff's trademark. <u>Id.</u> at 1364-65. The poster was offered for sale at various stores in Indiana. <u>Id.</u> at 1365. These stores acquired the posters from an interim distributor in New York to whom the California defendant sold the posters. <u>Id.</u> The <u>Curtis</u> court reasoned that although the interim distributor sold the poster in Indiana, "there is nothing tending to show that the [defendant] knew or should have known of such sales in this forum. For all that the

Court can surmise on the record before it, the [defendant] could have thought that [the interim distributor] was selling the poster only in New York." Id. at 1370-71. As a result, the court concluded that based on the record before it, defendants minimum contacts were insufficient for personal jurisdiction in Indiana. Id. at 1371.

In this case, similar circumstances exist. Although Mr. Richter attests that the decals of plaintiff's works were sold in Illinois by other vendors, nothing in the record indicates that defendant was aware that its decals of plaintiff's artwork would be sold in Illinois by other vendors. The facts of this case are even more convincing than those in Curtis because, unlike the defendant in Curtis, there is no evidence that defendant sold plaintiff's works to a retailer at all. Accordingly, this court cannot find plaintiff has presented a prima facie case that defendant delivered decals with plaintiff's artwork on them into a stream of commerce with the awareness or expectation that some of the products would be purchased in Illinois.[9] Accordingly, the stream of commerce theory does not justify specific personal jurisdiction over defendant in Illinois.

## C. Conclusion

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is granted. Plaintiff has failed to make a prima facie showing that personal jurisdiction exists over

---

[9]Plaintiff cites Saia v. Scripto-Tokai Corp., 366 Ill. App. 3d 419 (2006), in support of its stream of commerce argument. In that case the defendant, a Japanese corporation, designed a lighter and gave its subsidiary exclusive right to distribute it in the United States, where the lighter caused the death of plaintiff's child. Id. at 420. The Illinois Appellate Court reasoned that the defendant was subject to personal jurisdiction in Illinois because it owned all shares of the distributor, and obtained all profits from the manufacture and sale of the lighter in Illinois. Id. at 427. However, unlike Saia, in this case there is no evidence that defendant profits from the sale of products using its decals or that it controls any person or entity selling its decals. As a result, Saia is not analogous to this case.

defendant. Specifically, plaintiff has failed to show that defendant has sufficient contacts with Illinois such that exercising personal jurisdiction over defendant would comport with due process. Moreover, because there is no personal jurisdiction over defendant, this court need not address defendant's Rule 12(b)(3) motion to dismiss on the basis of improper venue, and such motion is denied as moot. See Menard, Inc. v. Skyline Pallets Serv., Inc., No. 3-08-CV-086-BBC, 2008 WL 2783528, at *7 (W.D. Wis. July 15, 2008).

ENTER:

_____

FREDERICK J. KAPALA
District Judge

Date: January 23, 2009